**Ex parte Roy CULVER, Jr.**

No. 09–88–268 CV.

Court of Appeals of Texas, Beaumont.

Nov. 3, 1988.

Gene A. Garcia, Corpus Christi, for appellant.

Terrell L. Pace, Livingston, for appellee.

OPINION

BURGESS, Justice.

Relator files this application for writ of habeas corpus alleging he is illegally restrained because of an order of contempt. Relator alleges the order is void because he is unable, through no fault of his own, to obey a child support modification order.

Relator was divorced in 1979. The court ordered child support payments of $300 per month. In June 1987, the mother/managing conservator filed a motion to increase the payments. On April 25, 1988, the court

ordered the payments increased to $1,250 per month effective September 1, 1987, and an arrearage of $5,700 accrued between September 1, 1987, and February 1988 be paid on or before June 1, 1988, in addition to the regular monthly payments ordered. The court further ordered the payments beginning March 10, 1988, be paid in bi-monthly installments of $625 on the 10th and 25th of each month. Relator gave notice of appeal of this order on June 29, 1988.

Thereafter relator continued to pay $300 per month. His ex-wife filed a motion for contempt that was heard on August 23, 1988. At that hearing the parties stipulated that relator had not paid the lump sum payment due on or before June 1, 1988. They also stipulated that relator had not paid the full amount of the monthly payments ordered by the court and the total arrearage as of August 23rd was $10,775. Relator stipulated he was financially able to pay child support of $425 per month beginning March 1988 and ending August 1988. The court found relator in contempt for failing to pay the $5,700 due on June 1, 1988, and for failing to pay $625 on the 10th and 25th of each month from March 10th through August 10th. Relator's punishment was assessed at six months' confinement for each separate violation to run concurrently. The court further ordered relator confined until he paid the $10,775 owed. The court suspended the order until October 1, 1988, allowing relator to purge by paying the entire amount before that date. As of October 5, 1988, relator was in custody pursuant to an order of commitment.

Relator alleges the order of commitment is void because of his inability to obey the court order. Relator is the president/chief operating officer of a closed corporation. There were extensive financial records admitted in the motion to modify. The propriety of that ruling will be decided in a separate appellate action.

After the stipulations, the contempt hearing began by relator testifying, on direct examination, that his optimum ability to pay child support was $425 per month. Thereafter there was extensive cross-examination about relator's business ventures, his ability to borrow money, his net worth and his financial status in general. There was particular testimony that Relator was making monthly payments for various expenses which exceeded the additional child support payments. This deliberate choice between meeting those obligations and the obligation ordered by the court is insufficient to show inability to pay. *Ex parte Heard*, 372 S.W.2d 942 (Tex.1963).

After reviewing the record of the contempt hearing, we are unable to say that relator proved his inability to pay on the specific dates or that all possible sources from which he could have obtained funds were exhausted.[1] *Ex parte Williams*, 704 S.W.2d 465 (Tex.App.—Houston [1st Dist.] 1986, no writ). The Writ of Habeas Corpus is denied.

WRIT DENIED.

BROOKSHIRE, Justice, concurring.

The record lucidly shows that the Relator was the Chairman or President of the Board of a certain fairly closely held corporation. He was also the owner of 50% of the voting stock. He served as the Chief Executive Officer and took care of and directed the day-to-day affairs of the corporation. He acted as general manager. There were only three directors on the Board of Directors of this closely held company or corporation. The original three directors were the Relator, his brother and his father. The father died after the corporation was formed. The father's shares of stock were inherited equally by Relator and his brother.

In one recent year, the Relator obtained a $60,000 bonus. This $60,000 bonus was declared in 1986 and was received from the company of which the Relator was the Di-

---

1. The concurring opinion quotes extensively from the record of the motion to modify. I find no indication that it was admitted into evidence at the contempt hearing nor any request that the trial court take judicial notice of the evidence in the motion to modify. Therefore I do not believe that record is properly before us even though it was filed with the application.

rector, President of the Board of Directors, General Manager and Chief Executive Officer. A W–2 statement of wages for the calendar year 1987 reflects that the Relator's income from this same corporation for the calendar year 1987 amounted to $82,416. The Relator also received a bonus in calendar year 1985. Mr. Culver testified that his adjusted gross income for 1986 amounted to $99,744. And, for 1986, his total earned income amounted to $140,677. This testimony was adduced from records belonging to, and in the possession of, Mr. Culver.

Mr. Culver also had sources of income other than his salary and his bonuses. A bank account in the First National Bank of Ingleside earned interest in the amount of $3,004 in 1986. The company or corporation that was run by the Relator had retained earnings for the company at the end of 1986 in the amount of $275,176.57.

It is correct that the complete records and the completed income tax return for the company and Mr. Culver for the year 1987 had not been completed but these records were not, of course, under the control of the child involved or the managing conservator of the child involved.

There were several other assets and one small business that the Relator had substantial interests in. Nowhere in the record are the above-discussed figures explained away, so to speak. It obviously was the trial judge's duty and prerogative to weigh the above-mentioned evidence as well as the entire record.

There is testimony in the nature of an admission made by Mr. Culver that the gross for his company in 1986 was up to approximately $1,800,000, but that it had fallen off considerably from the gross income of his company for the calendar year 1985. He predicted that 1987 would be worse than 1986, but the corporate records for 1987 were not available. As an estimate, he did state that his company would be lucky to gross a figure between $500,000 to $550,000 for 1987.

A careful reading of the record shows that the trial judge was, in my opinion, very conscientious and dedicated to his task. He certainly gave the parties their full day in court. In the highest judicial tradition, he gave the parties extra time to talk settlement and he tried to bring about an amicable resolution of the matters before him. Upon the oral submission of the case to us, it was conceded that the trial judge had a right to weigh the testimony and evidence set out above as well as the documentary evidence before him. In my opinion, the record strongly sustains and undergirds the court's ruling that the Relator was in contempt.

The trial judge's decision and order seemed the only appropriate ones because of the fact that the issue urged and argued by the Relator was that the enforced child support order was, and is, *absolutely void because of the Relator's inability to pay or to obey the court's order.* This record is replete with facts that fully sustain the trial court's actions. Under this record, the trial court had the prerogative to conclude that the Relator could have paid the child support as ordered, including payment from savings, sale of assets and also payment by obtaining a bonus.

The majority opinion recognizes that the Relator's basic position is that the child support modification order is void. Relator argues that the child support modification order is void because he is presently unable to obey and comply with the said modification order. The modification order was entered following a hearing thereon which began on March 1, 1988.

The Relator filed a Statement of Facts reflecting a completed transcription of the court reporter's notes in question and answer form, completely covering the hearing on the motion to modify on March 1, 1988. The Relator filed that Statement of Facts with the Court of Appeals Clerk on October 5, 1988. On the same date of October 5, 1988, the Relator filed a Statement of Facts covering a second hearing begun on August 23, 1988.

Furthermore, in Relator's application for writ of habeas corpus, the Relator attacks the child support modification order. This said order was reduced to writing and approved as to form by both attorneys of

record and was actually signed April 25, 1988, by Judge Stephen Phillips, Judge of the County Court at Law of Polk County. Also, in his application for writ of habeas corpus, the Relator refers to the Statement of Facts of March 1, 1988. In fact, Relator refers to this Statement of Facts no less than three times in his application.

The Relator contends that he has had no other source of income from any other investments or from anything except his weekly salary check from Ana–Tech. Ana–Tech is the closely held corporation in which Relator owns 50% of the stock. Furthermore, Ana–Tech was the company that paid the salaries and bonuses to Relator. Ana–Tech was the company that had retained earnings for said company in the amount of $275,176.57. This large sum was not shown to have been spent, disbursed or diminished. Relator had, in the past, been able to obtain large bonuses from Ana–Tech. Additionally, Relator argues, from the March 1, 1988, hearing, that he had no other personal investments producing income. Hence, Relator has put in issue and placed before us the March, 1988, hearing and record, in my view.

Because the Relator attacked extensively, on several grounds, the increased and modified child support order that was entered following the March 1, 1988, hearing, and because the Relator both attacks and refers to the March, 1988, hearing at least three times in his application for writ of habeas corpus; and, further, because the Relator affirmatively attacks the judgment of contempt and the commitment order pursuant thereto, on the contention that Relator was unable to obey the child support modification order signed and entered after the March 1, 1988, hearing; I think that both the record of the first hearing, in March, 1988, and the second hearing in August, 1988, are properly before us. Certainly, the Relator has never contended to the contrary. I, then, disagree with the sole footnote in the court's opinion.